Next case on our call this morning is agenda number 16, case number 107028, Tony Thornton v. Francisco J. Garcini, M.D. Counsel may approach the bench. May it please the court, counsel, I'm attorney Pamela Davis Gorkowski representing Dr. Garcini. I'm here with co-counsel Robert Gorbald. Expert testimony should be required in any case where the plaintiff is seeking recovery for negligent infliction of emotional distress. That expert testimony would provide evidence that the emotional distress is in fact severe and it would also provide testimony that it was in fact caused by the conduct for which the defendant was found liable. So not only would the expert give testimony that the distress is severe and caused by the defendant's conduct, but also give some nature and extent of the injury such as diagnosis and prognosis. At a minimum, expert testimony should be required where a fair question as to causation is raised on the evidence such as where, as in this case, there are multiple possible causes of the injury or whereas here the emotional distress is linked to a death or an injury that the defendant did not cause. In this case, two events occurred simultaneously, either of which may have caused emotional distress to Toni Thornton. She was 23 months pregnant and she went into labor prematurely. And then the delivery happened precipitously, meaning that it happened unusually quickly. Within a short time, the child during the delivery was breached and became entrapped at the neck and according to the expert testimony, the fetus, the 23-week-old fetus, would have died by asphyxiation within three minutes. Counsel, would you help me out here? Did you raise the question of expert testimony by motion or how was that raised at the trial level? We raised it on motion for directed verdict at the close of the plaintiff's case, also at the close of the evidence and in the post-trial motion. Then the other event that happened at the same time as the death of the child was that Dr. Garcini was not at the hospital, and so the child had died and was partially protruding, hadn't been entrapped at the neck, and so the plaintiff had to wait over an hour with the deceased fetus partially protruding until Dr. Garcini came and delivered the child. Counsel, how do you address the Hudson case, the Corrigan case, and Powell, where the expert testimony is not always required as a general matter? Hudson said, in that case that's a criminal case, and Hudson said that where the people had to prove that there was a psychological injury, that expert testimony was not required. And so that case is different than this case, because here there's compensation being awarded, and also the distress and emotional distress case has to be severe, and also there was no question as to causation in Hudson. Here there were two things that could have caused severe emotional distress in Hudson. There was no other testimony except that the fact that the defendant had tried to pull the victim out of the home was a cause of her emotional distress. So we don't have here in Hudson multiple possible causes. Corrigan is the leading case on negligent infliction of emotional distress, and that's a pleading case. What this court said in Corrigan is that we're going to modernize tort law and get rid of some of the artificial barriers to recovery for emotional distress. The court said that we're going to not require anymore a physical manifestation of emotional distress, and also for a direct victim there doesn't have to be a physical injury. But what Corrigan also said, Corrigan didn't say there doesn't need to be expert testimony. Corrigan said that these barriers were in place because of the imprecision that's inherent in awards for emotional distress. So Corrigan said that we're going to get rid of these barriers because we understand that the precision is there, but the jury will be assisted in evaluating the emotional injury through the testimony of psychologists and psychiatrists, and that the field of psychology and psychiatry has advanced to the point that these emotional injuries can be explained to the jury by the expert. So Corrigan coupled, and Corrigan also said that we have faith in our juries to be able to evaluate these emotional injuries, but Corrigan coupled that evaluation by the jury with the psychological testimony. Corrigan. Isn't, counsel, isn't it a fair reading of Corrigan to say that the portion that you're talking about dealing with expert testimony was an acknowledgment by the court that these type of injuries are difficult to assess and expert testimony might help, but that's quite a ways from saying that expert testimony is required, right? Your Honor, I agree that. So you're not pushing it to the portion where you think Corrigan says that expert testimony is required? I think we've said that Corrigan contemplated expert testimony. We agree with you that Corrigan doesn't say it's required in every case. It doesn't say it's not required. It's a pleading case. Right. Because the fact that expert testimony can be used to help prove a difficult proposition doesn't mean that such testimony is required in every case. Correct. You agree with that? Yes. Okay. Now, in this particular case, I mean, the occurrence for which emotional distress allegedly occurred was not just the death of a baby, but it was the delay in removing the baby for, you know, over an hour. Yes, Your Honor. And don't you think a jury could assess that and determine the emotional distress without expert testimony? I think that because there was a severe emotional distress would result from the death of the fetus, and it could possibly also result from the delay in delivery, that because there's those multiple simultaneous causes, that it goes beyond the count of the jury, beyond the understanding of the common juror, and it becomes a medical question. And Powell, that's what Powell said, that when the emotional distress is inextricably linked to the death of a baby, that the defendant's not responsible for. Yeah, but this was even, the second cause was the delay in the removal of the baby. Correct. So in Powell, there were different causes, the death of the decedent that the hospital didn't cause, and then the body was dropped, and the Powell court said because those are inextricably related to the death of the decedent, as here, Dr. Garcini was not responsible for the death of the child, not responsible for the emotional distress resulting from losing the baby, because those are inextricably related under Powell, expert testimony would be required in this case. Doe, the Supreme Court of Nebraska, in Doe says the same thing, that there were, there was an injury that the defendant didn't cause, and at the same time, the plaintiff claimed that her psychiatrist didn't treat her properly for the injury. The court said that the cause, that while it's clear that the plaintiff experienced mental suffering, the causation of such an injury is not within the common knowledge of a person lacking medical training. And so Hudson says also that expert testimony may be required in some cases, and it's our position that this is a case where it should be required. Are you asking for a rule that any time there's concurrent causes that expert testimony would be required, or are you urging a case-specific inquiry? I think we're advancing the, a rule that when a fair question of causation is raised on the evidence, that then expert testimony is required, and that's as in Powell and as in Doe. I think that Corrigan said that that lack of precision that's inherent in a claim for emotional distress is obviated somewhat by expert testimony to assess the jury with the causation. Didn't the instructions in this case limit the damages to the particular distress at issue? Yes, Your Honor. Does that have any import in our decision at all, that the instructions had the jury focus on that one cause? The jury had to have competent evidence as to causation in order to follow that instruction. So if it didn't receive competent evidence, it would have made a determination just based on speculation. Assuming that this is a complicated medical issue requiring expert testimony. Neither plaintiff nor ITLA cite any case that, other than the opinion below, that says when you have multiple cases, that you have multiple cases. Multiple possible causes of severe distress that happen concurrently, or when you have an emotional injury that's coupled with a death or an injury that the defendant's not responsible for. They don't cite any cases that say even in that case, even that extreme case, expert testimony is not required. So the decision below is the only one that we're aware of that holds that, that one causation is at issue, and the jury is qualified to determine that. And to distinguish between the emotional distress caused by the death or the injury, and that caused by the conduct for which the defendant was held liable. In this case, there was a prior trial, and the defendants in the prior trial were the hospital nurses and Dr. Garcini, and the prior jury found in favor of Dr. Garcini in all the claims, in favor of the nurses. In favor of the hospital on the wrongful death claim, and awarded $175,000 on the intentional infliction of emotional distress claim against the hospital. So Tony Thornton recovered $175,000 against the hospital. Under the single recovery rule, where a jury makes a determination of damages under estoppel by the verdict, that adjudication operates as limit on the amount of damages that the plaintiff can recover. At the time of that payment of the $175,000, the plaintiff had filed her post-trial motion challenging the verdict in the first trial. And at that point, all of the plaintiff's claims against the defendant, including the wrongful death and survival actions, were still active for purposes of further review. Yes, Your Honor. The payment appears to be an unallocated settlement of multiple claims against multiple parties, not a payment of the judgment against the hospital for emotional distress. Correct, Your Honor, that would go to the set-off issue. So the appellate court, that was the appellate court's finding? The appellate court found that the defendant failed to allocate the $175,000, and therefore the defendant wasn't entitled to a set-off. So we have two arguments related to the $175,000. The first is that there's a limitation on the amount of damages that this jury could award based on that adjudication, based on estoppel by the verdict. So the operative event for purposes of the single recovery rule is the adjudication. So when a plaintiff invokes a jurisdiction of the court, and then there's an adjudication, that adjudication is conclusive as to that issue. And in this case, Dr. Garcini was a defendant, and so that adjudication of the plaintiff's damages, assuming it to be a single indivisible injury, is binding on the plaintiff in this case. Wasn't there a settlement of some sort? After the, well, again, Your Honor, it's the adjudication that's operative for purposes of the single recovery rule. But there was, after the verdict was entered, the plaintiff entered into a settlement with the hospital, and $175,000 was paid. And the plaintiff released all the wrongful death claims, and the plaintiff was acquitted. And the plaintiff was acquitted of the emotional distress claims. But not against the doctor. Not against the doctor. And then there was an appeal as to the doctor in the second trial. So the adjudication by the verdict, it operates as a single, to limit recovery, and so because of that adjudication, and that final judgment that was never vacated, that serves to limit the recovery to $175,000. And assuming that the plaintiff had the right to proceed against the defendant for the $175,000, and then if defendant couldn't prove that satisfaction, then the plaintiff could recover that $175,000 against the defendant. And so we have here, so for a single recovery rule to apply, we need a single indivisible injury, which we have here. The plaintiff suffered one event where she, where the fetus was pro-treating and she had to wait for delivery. And the cases look at, in applying the rule, was the injury, did it happen all at one time? And here there was just one time that she was waiting for the delivery. And so we have a single indivisible injury because of that, and also because the, I have to get this. And also there's a, we know that there's a single indivisible injury because that's how the plaintiff treated it in the first trial. In the first trial, the counsel argued to the jury what we had, what the defendant's, plural, did here in making her wait for an hour and ten minutes is outrageous, and therefore he treated it as a single indivisible injury at that time. And the jury verdict form showed one line for the recovery of emotional distress. So because of that adjudication, because of that judgment, which has never been vacated, the plaintiff's recovery is limited to $175,000. The appellate court found the issue to be waived, but because whether the single recovery rule is a question of law and akin to a set off, and because the plaintiff, once they elected to treat the injury as a single indivisible injury, couldn't change the theory later because of the adjudication, the, it's a question of law that the plaintiff could not avoid the effect of the rule. And so because it's a question of law, it shouldn't be considered waived because waiver rules are not applicable there. As to the set off, there was a settlement, but the terms of the release, it was a set off. And so I don't want to say that the payment of $175,000 constitutes payment in complete satisfaction of the judgment. And so a defendant shouldn't have to show more than that the judgment was paid in order to show the allocation, in order to show that the $175,000 should be applied equal to the judgment. And the payment were equal, and the defendant shouldn't have to do more than rely on the express language in the release showing that that judgment was paid. That's what SACCHEC says. SACCHEC involved the same language, full satisfaction and payment equals a clear indication that the judgment was paid. Also, under patent, where there are separate claims covered in the release, it's not the defendant's burden to prove the allocation, it's the plaintiff's. The plaintiff could have, if the plaintiff wanted to try to allocate the $175,000, the plaintiff could have at the time that the judgment was, that the agreement was signed. And because different claims are involved here, we have wrongful death claim and the emotional distress claim, it should be the plaintiff's burden to prove the allocation. It should be the plaintiff's burden, not the defendant's. And given that the judgment was for $175,000 and the payment was for $175,000, even though other claims were included in that release, and given that the release said that the judgment is paid, the defendant met his burden of proving the allocation, and not only that, it was the plaintiff who had the burden. The release specifically excluded Dr. Garzini, didn't it? Yes, Your Honor. Dr. Garzini wasn't a party to the release. And so SACCHEC took that same language and said, you know, the other parties couldn't decide the legal effect of a setoff. The other parties, you know, the other defendant and the plaintiff couldn't decide, well, we're going to deny a setoff. And so because Dr. Garzini wasn't a party under SACCHEC, he's not bound by that language, whether he's entitled to a setoff. Thank you, counsel. What was the length of time in the delay arrival of the physician? According to the record, Dr. Garzini's testimony, the plaintiff arrived at the hospital at 635 with contractions. The delivery started at 710, and Dr. Garzini arrived at the hospital around 820. Was there any testimony that that length of time of delay was in and of itself negligence on the part of the physician? I think the plaintiff's expert testified when the patient arrived at the hospital at 635, there was a call made to the doctor, and the plaintiff's expert testified that he had enough information at that time to come to the hospital. It was a question of fact, because Dr. Garzini's expert testified that he acted appropriately in prescribing medications and instructing the nurses to take certain steps. So it was a question of fact whether he should have left at 635 if he had enough information at that time. Thank you, counsel. Good morning, counsel. Good morning. May it please the court. Counsel, my name is John Spezia. I'm from the law firm of Spezia, Arizonardo, and Joliet, and I'm here with my colleagues, Kent Slater and Kent Ayers. We represent the plaintiff in this case, Tony Thornton. The defendant in this case is asking this court to establish a bright-line requirement that in every case involving a negligent infliction of emotional distress, the plaintiff present expert testimony. It's our position that such a rule is not supported by the decisional law in the state of Illinois, nor is it supported by the record in this case. Ironically, this argument, this request that the court make this bright-line rule is based purely on counsel who are lay people. It is based on their interpretation of the emotional testimony that happened at trial. They're offering their own interpretations of the evidence of Tony Thornton's testimony. It's based on counsel's interpretation of a record in this case that contains not a single objection, not a single objection at trial to the testimony of Tony Thornton. There is uncontroverted evidence in this case that was presented through Tony Thornton about emotional distress. The appellant requests that this court make a finding and hold that psychologists, psychiatrists, and now even social workers, according to the briefing, must provide testimony in every case to establish emotional distress. Yet this record contains nothing, not an affidavit, no scientific or medical data, no research, not a single opinion from a psychologist, from a psychiatrist, from a social worker that indicates that a lay person would be unable to understand and appreciate these concepts, or that the evidence is based on emotional distress in nature. Counsel, do you agree that there are concurrent causes of her emotional distress? I would, the testimony, there's no question that there was a death of a baby and that there was horrific circumstance that followed that. So I guess in that respect, there were concurrent things that were going on. What's interesting about the argument here is that I went back and looked, and since the late 1800s in the state of Illinois, in every wrongful death case until recent legislation, a jury has been required to decide the difference between grief and sorrow evidence and evidence of loss of society. So in every single wrongful death case in this state until recent legislation, juries have decided these, what they would call concurring possible causes, because you have grief and sorrow in a wrongful death case, and a jury is instructed and was instructed in this case to disregard that. It's not compensable. Yet, witnesses take the stand, and they cry, and they're emotional, and they have a loss of love, and they have a loss of affection, and guidance and comfort, and all those things in every wrongful death case. So I guess what I would say is that if there are concurring possible causes here, it happens in every case. In every case involving emotional distress, they want us to adopt a rule, and it's really a back doorway of let's have a bright line test. They say where causation is an issue. Every witness who takes the stand, every person who walks on this earth, has emotions every day. So in every case, you have a causation issue as to what caused the emotional distress. What I'll point out for you in this case is that when we asked Toni Thornton questions at trial, we didn't ask her if she was pregnant, we didn't ask her anything about the fact that she now does not have a second son. We asked her specific questions, very pointed questions, about what emotional distress do you have from that hour and ten minutes when she sat with her baby's head stuck in her vagina and the body hanging out. That's what we asked her, and there were no objections, and those established causation. Those established emotional distress. So you're saying in this case, the jury wasn't required to apportion the causation. Absolutely not. Because it was all based upon this delay in delivery. That's right. In fact, I'll read the question for you at trial. No objection. Question. Toni, as a result of you being in a hospital, laying in bed for that hour and some odd minutes, with your baby protruding from you, I want you to tell the ladies and gentlemen in the jury what your emotional state was in the months and years following that. She says, I was depressed. I couldn't eat. I couldn't sleep. All I thought about was laying there for that hour and ten minutes holding my baby. Question. How often would you have those thoughts? All the time, all the time. I thought of suicide. It was so horrible. I didn't know how to contain myself. That's all I would think about. That's at the record, page 1431, page 1432. Follow-up question. Toni, at the present time, can you explain to the ladies and gentlemen of the jury what your emotional state is as a result of being left in a hospital bed for over an hour with baby Jason protruding from you? Answer. I think about that so much. I remember it like it was just this morning. I can feel his little body. So many things remind me of that. This testimony was powerful. Powerful testimony. We didn't need an expert. This jury didn't need an expert to come and tell them that Toni Thornton had emotional distress. The court brings up, what about the Corrigan decision? And, you know, the other issue that was raised is when were all these issues raised for the first time? They were raised after trial. They were raised after the trial. And this testimony that I just read you came in without an objection. There was no objection that Toni Thornton wasn't competent to testify. There was no objection about the single injury rule. There was no objection that this was really grief and sorrow evidence. In fact, in fact, the defendant himself stood up in front of the jury, waving a hospital record from a visit that Toni had to St. Joe's Hospital. They put all that evidence in the record, and I sat and listened to it, and they now claim that that was really evidence of grief and sorrow. Well, the jury was specifically instructed in this case that grief and sorrow was not compensable and it was not to consider it. So they create these straw men that they now knock down and say, look, that was grief and sorrow evidence. They put it in the record. This issue about causation, I want to read this to the court. We now, after the trial, we have an issue of causation, that there are these two possible causes. Defense counsel in his closing argument said this, quote, record page 1826, I have no reason to think that this horrific experience would not be distressing. Now, the defendant talks in a lot of double negatives in this case, so I want to take them out for you. I'll take the two negatives out of that. Here's what he said. I have reason to think that this horrific experience would be distressing. That's what he told the jury. He also said this to the jury, and this is at the record, page 1827, quote, this is defense counsel. I am in no way minimizing, in no way minimizing that this is a horrible experience for anyone to have gone through. I cannot in good conscience stand up here and even pretend to tell you that. He goes on, he says, quote, there's no question she experienced emotional distress. The only question is, is it worth that kind of money? And then he goes on. My problem is that if the defendant is not liable for the wrongful death of the child, then I don't see how he could be liable for the negligent infliction of emotional distress. Unless we look at this, we establish a standard of care. This physician made calls, gave instructions, but was delayed or delayed himself in coming. Is there any testimony that the standard of care was violated in the way that he handled it once he had been notified what the problem was in the room? Yes. And that testimony came from Dr. Charles Bird, our expert. And what was his testimony? His testimony was, I don't have it right here in front of me, we cited it in our brief. I can see it in the brief, but I just don't recall the actual verbiage. I know his response to the question is, that's why I'm here. He was asked if the delay in delivery was a violation of the standard of care. He said, yes, it was. Now, the violation of the standard... I thought delivery was blocked by the inability of the child to come completely out. Well, it was our position that the doctor should have been there. It was our position at trial that, look, the evidence at trial... You gave the impression that the instructions were to delay the exiting of the child. I'm sorry? I thought you implied that the instructions from the physician to the nurses in the room was to delay. No. No. The record in this case, with respect to, in terms of the facts, are this. That at 7 a.m., and these are in our appendix, page 85, at 7 a.m., Dr. Garcini was paged. The records indicate he was called, he returned a phone call. That's what the record says in black and white, page 85 of our appendix, 7 a.m. We know that at that time, it was undisputed at trial, that there was an obstetrical emergency. Toni Thornton was 6 centimeters with a bulging bag. She needed a doctor at 7 a.m. And Dr. Garcini didn't leave his house. And, in fact, his testimony at trial was that he didn't even know about the 7 o'clock call, even though it was in black and white in the medical records. At 7 or 8 a.m., there's another document, A6 of our brief, M.D. phone calls. There was nurse testimony from Nurse Wilhelmi that, at that time, her water broke. They did a vaginal examination and found the baby to be a footling breech. This baby was coming feet first. They had an emergency. She instructed that a call be made to Dr. Garcini. She was later told the call was made, and he didn't leave his house. At 7, 10 a.m., the records clearly indicate that Dr. Garcini was paged and en route to the hospital. At that point, the baby had delivered. The head had become stuck in Toni's vagina. He didn't leave his house. He was only 20 minutes away. He arrived at 8, 20 a.m. after he took a shower. Now, I will fully acknowledge, Dr. Garcini denied all this at trial, but it's my position the jury didn't believe it. They returned a verdict against him. And if you see, you will see in black and white at page 85 of our brief, it indicates Francisco Garcini was paged and that he returned a phone call. You'll see a yes, yes next to both of those, and you'll see the time at 7 a.m. This doctor could have been at this hospital, and this baby was still alive. That's what the evidence in this case showed. So the emotional distress, in fact, the jury instruction on emotional distress dealt only with that period of time that the baby was protruding from Toni's vagina. And, by the way, the answer to the question is an hour and 10 minutes. She sat there, never, ever saw a doctor. The jury instruction says it limits the emotional distress to, and it indicates when Jason Anthony Ebner's body was partially delivered  So not only were the questions that were asked of Toni Thornton very directed toward that hour and 10 minute period, but the jury instruction was very, very focused. And this jury was presumed to have followed these instructions. I will submit to the court that all of this after trial, all of this after the fact, thinking up new theories, coming up with new case law, we were at trial and we relied on the Corrigan decision, which you take all the negatives out of what they say. There is no, you cannot point to any language in Corrigan where it says an expert is required. In fact, I think the reasonable reading of that is to the contrary, that we have not lost faith in juries to decide these kinds of questions. And Toni Thornton's case and the facts, I've been involved in this case for eight years, and these facts are still shocking. Still shocking to this day. And we put them here and at this stage of litigation, they're in black and white and they're cold. But two times I sat and listened to Toni Thornton testify. It was palpable. Her emotion was palpable. Her distress, obvious. This is exactly the case that establishes why there should be no bright line rule. There should be no arbitrary rule that an expert is required to establish emotional distress. It certainly was not necessary in this case. Counsel, a couple other points. Counsel talks about the settlement that we entered into after the first case. And twice here today she says they entered into a settlement. But the single injury rule still applies. The only way you can reconcile that argument would be to say that the Contribution Act, which specifically permits settlements against multiple tort feasors for a single injury. The only way to reconcile this argument that once there's a judgment, the single injury rule applies. That means that the Contribution Act, you can never have a post-verdict settlement. That's certainly not the law in Illinois. So we settled this case with the hospital. They wanted out. Actually, in retrospect, it looks like they were pretty smart. We won the case on appeal. We tried it again. And we got a verdict again. So the settlement of the first case was clearly between multiple parties. The nurses wanted to be released. They had been sued individually. The hospital wanted a release. And they got released. It was multiple claims. Actually, there were two plaintiffs involved in the case. You'll see in the record that the check that was written for $175,000, it wasn't to Tony Thornton individually. It was also written to the estate. Why? Because the estate had wrongful death claims. The estate had Survival Act claims. Multiple plaintiffs, multiple defendants, multiple theories of liability, all extinguished for $175,000. They say in their brief that the appellate court in this case participates in a fiction, that it's impossible to have allocated those sums. It's not impossible and it's not a fiction. It's the law in the state of Illinois. And it has been since at least the Pasquale decision in 1995. Counsel this morning mentions the Patton case. And if I have my years right, Patton is a set-off case that's decided in 1994. And in Patton, it was an automobile accident case that was filed first and resolved. And then a second case was filed against Ford Motor Company for products liability, and that case was resolved. And then a separate third case was filed for medical negligence. And the court says, hey, look, under these circumstances, the third defendant, who wasn't even a party to the first two lawsuits, is not saddled with the burden of allocating. The court the next year, the court decides the Pasquale decision and distinguishes Patton on that very ground where separate lawsuits are filed and the defendant is not even a party to the lawsuit, he does not have the burden of showing the overpayment. That's not the case here. And so the appellate court properly found that they weren't entitled to a set-off. I'll end with this, and I know I'm repeating myself, but the case of Toni Thornton was a case where the jury didn't need an expert to tell them that she suffered from emotional distress. The defendants even knew that she suffered emotional distress, and they pled to the jury in their closing argument that it just wasn't worth that much money. Even they could figure that out. And this case is exactly why. What happened to Toni Thornton on August 28th of the year 2000 was horrific. Never again do I want to see a fact pattern like this. This is exactly the case that says to this court there should be no arbitrary requirement. There should be no bright-line rule that we need experts to come in and explain to people the ordinary concepts that all people understand. Just like Toni Thornton testified in that case, I couldn't eat. I couldn't sleep. I was depressed. I thought about suicide. I think about this all the time. Her testimony about how to this day she can feel the baby stuck in her. There's no need for an expert in this case, and there's no need for this court to establish a bright-line rule. Thank you. Thank you. Counsel, as I understand part of your argument is that there are these two, we'll call them potential causes of emotional distress, the death of the child and the waiting for the hour with the child protruding from her body. Is that at least part of it? Yes, Your Honor. And that expert testimony is somewhat necessary to indicate where, if there is emotional distress, where exactly it's coming from, what it's related to. Yes, Your Honor. Let me just finish so you get my question. And I guess it's not most of a question. It's more of a statement. I mean, under our law, so what? If there is emotional distress and one of the causes could be the cause that was related to the jury here, what difference would it make if someone, are you making an apportionment argument of sorts? Are you saying that an expert was necessary to say, yes, she has emotional distress, 80% of it is related to the death and 20% of it is related to this incident? Because it doesn't have to be, under our case law, right, it doesn't have to be the only cause of the injury. It can be any cause of the injury. That's my question. All right, Your Honor. Correct, it can be a, the plaintiff has to prove a cause. What the plaintiff testified here to isn't, she did not emotional distress generically. She testified, I suffer from depression. She testified, I had suicidal thoughts seven months after this injury. So in a minimum, she needed competent evidence that more probably than not, the delay in delivering the deceased fetus was a cause of depression and a cause of suicidal thoughts seven months later. She was compensated for those feelings and those emotions. And when you have concurrent causes of a death of a child that the mother was looking forward to, she couldn't help him, she couldn't save him, and at the same time we have that the child became entrapped, I think that it's beyond the ken of the jury to know that that delay in the delivery was a cause of depression and suicidal thoughts. It's hard for me as I sit here, counsel, thinking of any psych, and I'm not saying I'm right, I'm just telling you my impression, of any psychiatrist or psychologist to not say that the incident as related to this case could not be a cause of depression or a cause of suicidal thoughts. And as I think of this trial with experts on both sides, I'm sure the plaintiff would have had some expert to say, yeah, that could be a cause. And you admit that all it has to be is a cause, and experts on the other side, how in relation to this case when you have the death of a child and the graphic nature of the injury that was presented to this jury, how is that above the ken of the average juror to say that could be a cause of depression? Well, because it's a complicated medical question. What causes depression, what causes suicidal thoughts or ideation, especially when it's seven months later, especially given the emotional distress? And the purpose of the expert would be to say that this is a cause of suicidal thoughts, and I guess I disrespectfully disagree that it's an automatic conclusion that it could be a cause of a suicidal thought, separate and apart from the loss of the child. Right. And my point is only in saying this, that when we have it being a cause, I can see where someone could come in and talk about the other cause, you know, being the death of the child caused this. And there's competing causes, but what we have under our case law isn't finding out which cause was more attributable to the emotional distress. It's whether, you know, you can have two concurring causes, as you readily agree. Correct. You're just saying that expert testimony is necessary to relate that in this particular case the incident involved was a cause of the emotional distress suffered. That she was compensated for. That given that depression and suicidal ideation are complicated medical diagnoses and they have multifarious causes, and we all know that, there's lots of causes that can be involved. And when she's testifying that, you know, I leave my bedroom and the last thing I see is the urn of ashes on my dresser, she testified to that for a conclusion by the lay jury that a cause of that was the delay in delivering the child as opposed to the loss of the child would require expert testimony. Otherwise, what we're, you know, the concern would be. And the jury under your assessment would have to believe, based on expert testimony from your stance, that to a reasonable degree of medical certainty or psychiatric certainty or whoever the expert might be, that the incident involved in this case could not be a cause of depression. Or suicidal thoughts. Right. Okay. Well, not that it could not be, but that in this case it wasn't. The expert would be there to say, this is what happened in this case. I'm not trying to advance, Your Honor, that it could never be a cause of suicidal thoughts or depression. I'm trying to advance that. Coupled with what else happened in this case, right. Coupled with what happened and that it would take an expert to sort out the causes and what was in fact a cause of the depression. I'm not trying to say it could never be. I'm just saying we need an expert to help us with that. Thank you, counsel. I'm sorry. You may proceed. Can I just clarify a few things? That's okay. I'm sorry. First, counsel's incorrect that we did not rate. Counsel says we didn't raise the issue on expert until the post-trial motions, is my understanding of what he said. And it's in motions for directed verdict and it's in the record. And we cite the references for that. Under the single recovery rule, plaintiff says, well, we have a settlement, and so the court can just ignore the fact that there's a final judgment that was never vacated and we're just going to ignore the fact that there was an adjudication by the jury and we're just going to go by the terms of the settlement. And in SACCHEC, there was the amount of the judgment was voluntarily paid by the insurance company. The only differences in this case was the payment was within 30 days. In SACCHEC, it was beyond 30 days. But in SACCHEC, the court still enforced the single recovery rule. And so that's the same situation here. So the defendant is asking that the judgment be reversed based on the lack of competent evidence as to causation of the plaintiff's emotional distress. Alternatively, we're asking that the plaintiff's recovery be limited to $175,000 under the single recovery rule. And alternatively, that the, I guess and conjunctively, that the setoff of $175,000 be allowed to the defendant. Thank you. Thank you, counsel. Case number 107028.